J. DOSS MILLER ET AL V. J. R. FLEMING ET AL.

No. A-2694. Decided November 8, 1950.
(233 S. W., 2d Series, 571.)

*Fred O. Jaye,* of De Leon, *Turner & Seaberry, Virgil T. Seaberry,* and *Cyrus B. Frost, Jr.,* both of Eastland, for petitioners.

The Court of Civil Appeals erred in failing to hold that petitioners were the owners of said minerals because the record showed and the trial court found that the vendor's lien which were superior to the asserted reservation were never satisfied. Wright v. Giles, 129 S. W. 1163; Rooney v. Porch, 239 S. W. 910; Booty v. O'Connor, 287 S. W. 282.

*C. H. Milliken,* of Fort Worth, and *Mark Callaway,* of Comanche, for respondents.

The ruling of the Court of Civil Appeals was correct. Smith v. Tipps, 229 S. W. 307; Myers v. Crenshaw, 116 S. W. 2d 1125, McWhorter v. American Natl. Life Ins. Co., 125 S. W. 2d 1104,

MR. JUSTICE SHARP delivered the opinion of the Court.

The real issue here relates to the ownership of a one-half interest in mineral rights in about 400 acres of land in the William Shipp League in Comanche County, Texas.

This is a suit in trespass to try title, involving the minerals in about 400 acres of land in the William Shipp League in Comanche County, Texas, by the heirs of J. Doss Miller, Sr., against the heirs at law of J. R. Fleming, Alex Booth, and Daniel Wise, excepting the defendant Kelsey, who is an assignee of certain mineral interests from the Fleming and Wise heirs. Upon the trial before the court without a jury, plaintiffs recovered the mineral rights involved therein. The Court of Civil Appeals reversed the judgment of the trial court, and held: (1) That the title to one-half of the minerals in the land is vested in the heirs of J. Doss Miller; (2) that the title to the other one-half of the minerals is vested in the heirs of J. R. Fleming and Alex Booth; and (3) that the heirs of Daniel Wise have no interest in the minerals. 228 S. W. 2d 355.

Petitioners bring the case here on application for writ of error on three points, which read as follows:

"Point One. The Court of Civil Appeals erred in failing to hold that Petitioners were the owners of said minerals because the record showed, and the trial court found, that there was a transfer of the superior legal title to the land to Claflin and Hecht.

"Point Two. The Court of Civil Appeals erred in failing to hold that Petitioners were the owners of said minerals because the record showed, and the trial court found, that the vendor's

liens which were superior to the asserted Reservation were never satisfied.

"Point Three. The Court of Civil Appeals erred in holding that no title to the minerals passed under and by virtue of the power of attorney to Herman."

It is undisputed that James C. Walker is the common source of title. The evidence relating to the transactions regarding this land shows that they occurred many years ago; that some of the parties resided in Texas and others in Massachusetts and New York; that irregularities appeared in the record of title; and that J. D. Miller, Sr. secured several deeds in order to obtain a good title to the land. Upon request of the defendants, the trial court filed exhaustive findings of fact, and since they give the chronological history of the transactions, we think it proper to copy therefrom the following:

"II.

"By deed dated October 21, 1887, James C. Walker conveyed the land in controversy to J. R. Fleming who executed as a part of the purchase price three $1,000.00 notes secured by an express vendor's lien on said land.

"III.

"By deed dated February 8th, 1890, J. R. Fleming and Alex Booth conveyed this land to Daniel Wise, the grantee assuming all liens against the land. This deed contained a general warranty. The grantors attempted to reserve 1/2 of the minerals.

"The Deed Records of Comanche County do not show how Booth acquired any interest in the land. But Fleming recognized Booth as his co-owner and each attempted to make a mineral reservation. Booth executed certain vendor's lien notes to Fleming in part payment for an undivided 1/2 interest in the land and as a consequence, I find that Fleming in fact executed a deed conveying an undivided 1/2 interest in the land to Booth, though said deed was never filed for record. The execution of said deed is presumed from the above facts and from all the circumstances shown thereby and otherwise in this case and from the long continued, open and adverse possession of said lands by plaintiffs and those under whom they claim. Some of the defendants herein claim from and under Booth, but their claim is predicated on the presumption of a deed from Fleming to him, which I hereby find to be a fact.

## "IV.

"By general warranty deed dated March 6th, 1890, Daniel Wise conveyed this land to Henry W. Dayton, who assumed the payment of all outstanding liens, which included the purchase money notes from Fleming to Walker and the subsequent purchase money notes from Booth to Fleming. In this deed grantor attempted to reserve 1/2 of the minerals.

"This deed contained a general warranty clause, but the County Clerk in recording the instrument erroneously failed to record a portion of the warranty clause which was a clerical error on his part and which mistake was first discovered during the trial of this case. I find as a fact that said deed contained a general warranty and that the recording of it was erroneous. In addition to the express warranty of title, there was also an implied warranty of title in said deed.

## "V.

"On December 7th, 1891, Henry W. Dayton executed a valid deed of trust to Abram C. Bernheim, Trustee, on said land and all minerals thereunder to secure the payment of the three $1,000.00 notes from Fleming to Walker and the five notes from Booth to Fleming, aggregating $9500.00, which notes were then held and owned by H. B. Claflin & Company of New York and Hecht Bro. & Company of Boston, respectively. At said time H. B. Claflin & Company and Hecht Bro. & Company were the owners and holders of all of said notes, the vendor's liens securing the same and the superior legal title to the land as retained by Walker when he sold to Fleming and by Fleming when he sold an undivided 1/2 interest to Booth. The Deed Records do not show a formal transfer and assignment of such superior legal title to the beneficiaries in the deed of trust, but I find that there was a valid conveyance of the land and superior legal title to said beneficiaries as reflected by all of the evidence and circumstances shown in this case and the long continued and adverse possession of the land by plaintiffs and those under whom they claim.

## "VI.

"The purchase money notes executed by Fleming to Walker and by Booth to Fleming, aforesaid, were never paid, and said liens reserved were never satisfied. On May 8th, 1901, the land was sold according to law to Joseph M. Herman by J. A. Holman, Substitute Trustee, under a deed of trust executed by Henry Dayton, for a price less than the amount of the notes from Fleming to Walker. The purchaser at said sale, Joseph M.

Herman, conveyed the title to said land to J. Doss Miller, Sr., on November 19th, 1906, and plaintiffs herein own said land under and by virtue of the duly probated wills of J. Doss Miller, Sr., and his wife.

"Previously thereto, on November 7th, 1895, Frank Herman & Company, Hecht Bro. & Company and H. B. Claflin & Company were the owners of said purchase money notes executed by Fleming to Walker and by Booth to Fleming, respectively, and the liens securing the same and the superior legal title to said land, and on said date executed a general power of attorney to J. M. Herman, Esq., authorizing him to sell at public or private sale or to make partition and conveyance of the land. Pursuant to said authority, Joseph M. Herman on January 1, 1896, executed a deed to J. Doss Miller. Thereafter, on September 23rd, 1903, Joseph M. Herman executed a deed to J. Doss Miller. Theretofore, Bernheim, Trustee, executed a deed to Miller, dated May 1st, 1895.

## "VII.

"Plaintiffs are the owners of the land and the minerals thereunder in the proportions shown in the judgment of record herein in this case, towit: J. Doss Miller, Iva Miller Pittman, Sally Jo Miller Williamson, Donnie Miller Pool and Oran Miller Ridenhower each own an undivided 1/5th interest in and to the oil, gas and other minerals under said land; J. Doss Miller owning an undivided 2/5th interest, Oran Miller Ridenhower owning an undivided 2/5th interest and Sally Jo Miller Williamson owning an undivided 1/5th interest in and to the surface to said land.

## "VIII.

"The defendants own no interest in and to said land nor in and to the oil, gas and other minerals thereunder."

Upon request of defendants, the trial court filed supplemental findings of fact, from which we quote as follows:

## "I.

"I find that the superior legal title to this land passed to H. B. Claflin & Company and Hecht Bro. & Company by a deed and a written transfer, the execution of which, though not shown of record, is proved by all of the facts and circumstances in this case.

## "II.

"I find that a formal written transfer and assignment of the vendor's lien was executed from James C. Walker to H. B. Claflin & Company and Hecht Bro. & Company, the execution of which, though not shown by record, is proved from all of the facts and circumstances in this case.

## "III.

"I find that James C. Walker executed and delivered to H. B. Claflin & Company and Hecht Bro. & Company a conveyance in writing of the superior title to said property, the execution of which, though not shown of record, is proved from all of the facts and circumstances in this case.

## "IV.

"I find that plaintiffs and those under whom they claim have asserted title to the land in this suit, including the surface and all minerals thereunder, but that plaintiffs have never drilled or had drilled any well or wells on said land to develop the same for oil, gas and other minerals, and the notice given of plaintiffs' claim was their physical possession of the land."

The trial court judge stated his conclusions of law as follows:

"1. The purported reservation in the deed from Fleming and Booth to Wise was never effective because of the outstanding express vendor's liens and superior legal title.

"2. The purported reservation in the deed from Wise to Dayton was never effective for the reasons stated in the preceding conclusion and for the further reason that in the deed from Wise to Dayton, Wise executed a general warranty deed thereby conveying all interest which he owned in and to the minerals under the land.

"3. The vendor's liens and the superior legal title reserved in the conveyance from Walker to Fleming and from Fleming and Booth to Wise duly passed to the plaintiffs herein.

"4. Judgment should be for plaintiffs and against defendants."

The Court of Civil Appeals approved the findings of the trial court that the deed from Wise to Dayton contained a general warranty clause, and that it had been incorrectly recorded; and that the attempted reservation by Wise of one-half the minerals is ineffective, in view of the decision of this Court in Duhig v. Peavy-Moore Lumber Co., Inc., 135 Texas 503, 144 S. W. 2d 878.

The trial court found that petitioners are vested with all the minerals in and under the land in controversy. This finding is based upon the fact that there was a valid conveyance of the land, and in such conveyance there was retained a vendor's lien as well as the superior legal title; and that thereafter there was executed a valid conveyance of the vendor's lien and the superior legal title, which were acquired by J. Doss Miller, Sr., from Herman, and which are now owned by petitioners. The trial court also found that this conclusion was strengthened when considered in connection with the evidence showing the long-continued, open, and adverse possession of the land by petitioners and those under whom they claim.

■ The Court of Civil Appeals held that the evidence was insufficient to support the foregoing findings of the trial court, and reversed the judgment of the trial court as to one-half of the minerals, and vested same in the heirs of Fleming and Booth. If the Court of Civil Appeals had reversed and remanded the cause for a new trial on the insufficiency of the evidence, that ruling would have bound this Court to such holding. Childre et ux. v. Casstevens, 148 Texas 297, 224 S. W. 2d 461; Deen v. Birdville Ind. School Dist., 138 Texas 339, 159 S. W. 2d 111. However, in this instance the Court of Civil Appeals held as a matter of law that the evidence did not support the judgment of the trial court in favor of petitioners for one-half the minerals, and reversed and rendered the case as to such one-half of the minerals in favor of respondents. That presents a question of law reviewable in this Court. Childre et ux. v. Casstevens, 148 Texas 297, 224 S. W. 2d 461.

■ The reservation under which respondents claim title to one-half of the minerals in and under this land was subject to the express lien retained in the deed. Rooney v. Porch, 239 S. W. 910, Tex. Com. App.; Booty v. O'Connor, Tex. Civ. App., 287 S. W. 282, writ refused. Here we are dealding with conveyances executed more than 50 years ago. Some were executed in this state and others were executed in distant states. It is quite obvious that by reason of the lapse of so many years the law will not exact the same particularity of proof as would be required in cases where the testimony of the particular transaction is supposed to be accessible. Wright v. Giles, 60 Tex. Civ. App. 550, 129 S. W. 1163, writ refused; Texas Land & Cattle Co. v. Walker et al., Tex. Civ. App., 105 S. W. 545; DeRamirez v. DeRamirez, Tex. Civ. App., 29 S. W. 2d 872, writ refused.

In the case of Wright v. Giles, supra, it was said: "The law only demands the best proof of a transaction that it is susceptible of, and when that is produced then it becomes a question whether or not its probative force is such as to establish its existence."

■ The rule by which presumptions of fact are made admissible emanates from the evidence. The application of the rule depends upon the character of the evidence, and its application is liberalized when the evidence is circumstantial. Masterson et al. v. Harris County Houston Ship Channel Nav. Dist., Tex. Com. App., 15 S. W. 2d 1011, 67 A. L. R. 1324. The application of this rule rests upon the necessity of the situation. If under all the facts and circumstances the testimony tends to prove that the superior legal title to this land passed to Claflin & Company and Hecht Brothers & Company by deed and written transfer, although not shown by the record, and that a formal written transfer and assignment of the vendor's lien was executed by James C. Walker to Claflin & Company and Hecht Brothers & Company, though not shown in the record, such testimony is admissible. A deed or other instrument may be proved by circumstances or presumptive evidence, and the tendency of the courts is to extend rather than limit the rule. 14 Tex. Jur., 783; West Texas Construction Co. v. Liberty National Bank, 48 S. W. 2d 681; Bounds v. Little, 75 Texas 316, 12 S. W. 1109; DeRamirez v. DeRamirez, Tex. Civ. App., supra; Fowler v. Texas Exploration Co., Tex. Civ. App., 290 S. W. 818, writ refused; Masterson et al. v. Harris County Houston Ship Channel Nav. Dist., supra.

In the Masterson case, supra, it was held: "* * if, from all of the facts and circumstances introduced in evidence, it is more reasonably probable that the claim made that a deed was executed, than that it was not, then a jury trying the case, or judge without the jury, would be warranted in presuming in favor of the claimed existence of the deed, and find accordingly."

In the DeRamirez case, supra, in which this Court refused a writ of error, it was said: "Evidence need only lead to the conclusion that the grant might have been executed. Fowler v. Texas Exploration Co., and Miller-Vidor Lumber Co. v. Schreiber, supra. A removal of all reasonable doubt is not essential. Brewer v. Cochran, supra. Only a fair probability of the existence of such title need be proved. Grayson v. Lofland, supra. If the circumstances are consistent with the presumption that

a sale or deed was made, and, in view of the circumstances, it is more reasonable to believe that such a sale or deed was made than that it was not made, the jury are at liberty to presume and find that it was made. Herndon v. Burnett and Frugia v. Trueheart, supra. It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed and that its execution would be a solution of the difficulties arising from its nonexecution. Fletcher v. Fuller and Hutchison v. Massie, supra."

■ The duty rested upon the trial court to pass upon the evidence introduced. If there was evidence to sustain the findings and conclusions of the trial court, the Court of Civil Appeals was clothed with the power to reverse and remand the case for a new trial on the insufficiency of the evidence; but the Court of Civil Appeals did not have the authority to reverse and render the cause. Childre et ux. v. Casstevens, 148 Texas 297, 224 S. W. 2d 461. After a careful consideration of the evidence under all the surrounding facts and circumstances, we think that there was some evidence tending to support the findings of the trial court.

The order of the Court of Civil Appeals reversing the judgment of the trial court is not disturbed, but that part of the order vesting one-half of the minerals in respondents is reversed, and the cause is remanded to the District Court for a new trial.

Opinion delivered November 8, 1950.

No motion for rehearing filed.