**Dudley A. FRANZEN, et al., Appellants,**

**v.**

**B. J. DALE, Appellee.**

**No. 395.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 6, 1971.

Rehearing Denied Jan. 27, 1971.

R. E. McDaniel, Beaumont, for appellants.

Everett H. Cain, Liberty, for appellee.

TUNKS, Chief Justice.

This is a trespass to try title case. The pleadings consist of plaintiffs' formal trespass to try title petition and defendant's plea of not guilty and general denial. No question of adverse possession is involved. The property involved is a tract of land about ten acres, described as Lot 1, Block 17 of Winnie Suburbs, a subdivision in Chambers County, Texas. At all relevant times it has been unimproved and unfenced. After trial before a jury the trial court rendered judgment for defendant and plaintiffs have appealed.

In 1895 Winnie Loan & Improvement Company acquired a tract of land in the Hogatt and Duran Leagues in Chambers County. This owner was, by stipulation, established as the common source of title. It subdivided its land into two subdivisions, one called "Winnie Suburbs" and the other called "Winnie Townsite." The plats of such suburbs were duly recorded in the office of the County Clerk of Chambers County. Winnie Suburbs was divided into blocks numbered consecutively 1 through 49. The lots in those blocks were of various size, a usual one being, as was the one here in controversy, about ten acres. Winnie Townsite was divided into smaller blocks, a usual one being 300 by 400 feet and divided into 16 lots 50 by 150 feet. There was a Lot 1, Block 17 in Winnie Townsite.

In 1907, M. C. Wilson, who then lived in Minneapolis, Minnesota, bought all of the property in Winnie Suburbs not theretofore sold by its developers. The land so acquired by him included that here in controversy so that he, too, became a common source of title. At about the same time he acquired the remaining unsold parts of Winnie Townsite. Wilson thereupon engaged in a program to promote sales of the properties in the two subdivisions. Beginning soon after the date of his acquisition and continuing into 1930, he executed many deeds conveying many lots and blocks to various buyers. Two of those deeds present the principal bases of the controversy in this case. The first was a deed purportedly executed on February 6, 1912, conveying Block 17 Winnie Suburbs to E. A.

Page. The defendant claims through this deed. It was not recorded in the deed records of Chambers County until 1944. The other was a deed dated April 25, 1930 by which Wilson conveyed to M. L. Franzen certain property in Winnie Suburbs described by lot and block number and also conveyed "all right, title and interest I may have in any other land in Hogatt and Duran League and Lots and Blocks in Townsite and Suburbs of Winnie, except One-half (½) all rights, according to record plat thereof in Chambers County, Texas." This deed did not describe the subject property by lot and block number. It is through the "omnibus clause" of this deed that the plaintiffs base their principal claim to title.

Defendant, pursuant to demand, filed his abstract of title. That abstract included the 1912 deed from Wilson to E. A. Page and by mesne conveyances, connected defendant's claim of title to Lot 1, Block 17, Winnie Suburbs to such deed. Plaintiffs filed affidavits to the effect that such deed was a forgery. Defendant filed an affidavit to the effect that the original of such deed had been lost and could not be produced.

■ Obviously, if the prior (1912) deed through which the defendant claimed was validly executed and delivered if defeated the claim of plaintiffs derived through the 1930 deed. The 1930 deed from Wilson to M. L. Franzen did not specifically describe Lot 1, Block 17 Winnie Suburbs and did not purport to convey that property if it had previously been sold by Wilson. The omnibus clause in that deed, as to property in Winnie Suburbs not specifically described in such deed was in the nature of a quit claim. Thus, even though the 1912 deed from Wilson to Page had not been recorded, the plaintiffs claiming through M. L. Franzen, cannot prevail on the ground that M. L. Franzen or they were bona fide purchasers for value without notice of any title outstanding before their 1930 deed. Cook v. Smith (Tex.Sup.Ct.1915), 107 Tex. 119, 174 S.W. 1094; Hall v. Tucker, 414 S. W.2d 766 (Tex.Civ.App.1967), n. r. e.; Stonum v. Schultz, 138 S.W.2d 825 (Tex. Civ.App.1940), no writ hist.

■ The defendant, to defeat plaintiffs' recovery by virtue of his superior title through the 1912 deed from Wilson to Page, had the burden of proving the execution and delivery of that deed. This proof could not be made by proof, under Art. 3720, Vernon's Ann.Tex.Civ.St., of the deed's recordation for more than 10 years because of the plaintiffs' affidavit of forgery. Upon the filing of such affidavit defendant, to establish the admissibility into evidence of such deed had the burden of proving its execution and delivery as at common law. Steiner v. Jester (Tex.Sup. Ct.1894), 86 Tex. 415, 25 S.W. 411. However, the defendant filed an affidavit and offered other evidence that the original of such deed was lost and could not be produced. This made admissible the recorded copy and other secondary evidence to prove its execution, delivery and contents. See Houston Oil Co. v. Niles (Tex.Com.App. judgment accepted and holding approved) 255 S.W. 604 (1923); Abraham v. Crow, 382 S.W.2d 756 (Tex.Civ.App.1964), no writ hist. Such evidence having been heard the trial court submitted two special issues in answer to which the jury found that Wilson executed the 1912 deed and delivered it to Page. It was on such findings that the court rendered judgment for defendant. The principal basis of plaintiffs' appeal consists of a challenge of the legal and factual sufficiency of the evidentiary support of those findings.

When Wilson bought the Winnie Suburbs property in 1907 a vendor's lien was fixed to secure future payment of part of the purchase price. There was a provision for partial release from that lien upon payment to the lienholder of $7.50 per acre for the tract to be released. On February 12, 1912, six days after the warranty deed from Wilson to Page, the lienholder executed a release of lien against the property in question.

From 1912 to 1930, Wilson paid taxes on many lots and blocks in Winnie Suburbs and Winnie Townsite but did not pay taxes on the subject property. Page and his successors began paying taxes on this property in 1913 and had consistently done so down to the time of the trial. M. L. Franzen, after the above mentioned deed to him in 1930, rendered and paid taxes on many other lots and blocks in Winnie Suburbs but never rendered or paid taxes on the subject property.

The 1912 deed from Wilson to Page was acknowledged before J. E. Murray, a notary public in and for Hennepin County, Minnesota. One witness was Herbert Roedenbeck who was 89 years old. He had been engaged in real estate promotion and development in and around Chambers County since 1909. He knew M. E. Wilson personally, had been in his office in Minnesota on several occasions and knew J. E. Murray to be Wilson's office manager. Many of the other deeds executed by Wilson and recorded in Chambers County were acknowledged before J. E. Murray. Roedenbeck testified that M. L. Franzen, acting for an oil developer, had procured from Page an oil and gas lease on the subject property in 1935. The witness himself, had procured such lease from Page at a later date.

Another witness called by defendant was Mr. Leroy McCall, an attorney practicing in and around Chambers County since 1932. McCall had represented M. L. Franzen for a number of years. In 1957 M. L. Franzen and his wife created a trust to which they conveyed substantially all of their real property. Included in the property so conveyed was all of the property owned by the grantors in Winnie Suburbs with an exception not relevant here. The witness, McCall, was one of the trustees and the grantors were the other two. The beneficiaries of that trust were the plaintiffs here, grandchildren of the grantors. That trust had been terminated before trial. When this suit was filed McCall filed an answer for the defendant and

continued to represent him for a time. McCall had, however, with leave of court, withdrawn as counsel for defendant before the trial from which this appeal is taken. At a former trial, which apparently ended in a mistrial, McCall was called as a witness by the plaintiffs. As such witness for plaintiffs he had been asked to "tell the whole story" as to M. L. Franzen's relationship to the subject property and it had been "gone into very thoroughly." As touching on his credibility, the plaintiffs were permitted to show that McCall, as agent for a title insurance company, had caused a title insurance policy to be issued to the defendant covering the subject property.

McCall testified as to the circumstances surrounding the execution of the 1930 deed from Wilson to M. L. Franzen. Wilson was experiencing financial difficulties and was unable or unwilling to continue the payment of taxes on his properties in Winnie Suburbs and Winnie Townsite. He conveyed those properties in Winnie Suburbs to M. L. Franzen, reserving to himself one-half of the "oil rights" in consideration for the grantor's promise to pay taxes on the properties conveyed and the reserved mineral interests. The deed prepared and executed by Wilson listed by specific description certain tracts in Winnie Subdivision which Wilson's records indicated that he still owned. When he mailed the deed to M. L. Franzen he also sent his office records pertaining to Winnie Suburbs along with a letter directing M. L. Franzen to examine the records and to add to the descriptions in the deed descriptions of any of the property in Winnie Suburbs which the records showed that Wilson still owned. M. L. Franzen did not, as suggested by that letter, add to the deed any other specific descriptions of property in Winnie Suburbs, but, rather, added the omnibus clause above quoted.

McCall, during the time he was trustee under the trust created by M. L. Franzen and wife, had possession of the records sent by Wilson to M. L. Franzen and knew

their contents. He had, before this trial, returned those records to M. L. Franzen or his representative. Before the trial the defendant made formal demand of the plaintiffs for the production of those records. Upon the plaintiffs' failure to produce them McCall's testimony as to their contents was property received. Part of such testimony was to the effect that those records included an entry to the effect that Wilson sold Lot 1, Block 17 of Winnie Suburbs to E. A. Page for cash in 1912.

During the time he was trustee McCall made a thorough investigation to identify the properties owned by the trust. He testified that when he made inquiry of M. L. Franzen concerning the title of the property here in question Franzen showed the entry in Wilson's records showing its sale and said, "I knew Page personally and I know he bought and paid for that lot. That belongs to Page."

In 1964 the Franzen trust was terminated by a court decree which ordered the properties of the trust conveyed to the beneficiaries, plaintiffs herein. That decree listed by specific description the many items of property owned by the trust and did not include a description of the property here in question.

M. E. Wilson, E. A. Page and M. L. Franzen all had died before the filing of this suit. There was evidence that by general reputation the property in question was recognized as being owned by Page and his successors. There was no evidence that either Wilson, M. L. Franzen or their successors had, after 1912, claimed any ownership before the filing of this suit. On several occasions Page or his successors had executed oil and gas leases, grazing leases and right of way deeds covering the property.

There is little, if anything, in the evidence except the late filing for record that refutes these and other facts that tend to prove the execution and delivery by Wilson to Page of the lost deed of 1912. There is no explanation in the evidence as to why Page did not file the deed for record when it was delivered to him. There is, however, a possible explanation as to why he did file it in 1944. The filing was at about the same time as the filing for record of an oil and gas lease given by Page and it is possible that the filing was at the request of that lessee.

Where, as in this case, the original of a deed is shown to have been lost so that it cannot be produced secondary evidence, direct or circumstantial, is admissible to prove its contents and its execution and delivery. Miller v. Fleming (Tex.Sup. Ct.1950), 149 Tex. 368, 233 S.W.2d 571; Masterson v. Harris County Ship Channel Nav. Dist. (Tex.Com.App.1929), 15 S.W. 2d 1011; Webb v. British American Oil Producing Co., 281 S.W.2d 726 (Tex.Civ. App.1955), n. r. e. The evidence in this case clearly supports, legally and factually, the jury's findings that M. E. Wilson did execute and deliver the 1912 deed to E. A. Page. Appellants' points challenging such evidentiary support for the verdict are overruled.

Prior to January 20, 1939, Wilson's heirs and other successors filed suit against M. L. Franzen in the Federal District Court for the Southern District of Texas to cancel the 1930 deed and for damages. The basis of that cause of action was the allegation that Franzen had breached his promise to pay the taxes on the property conveyed and thus had caused Wilson's successors to lose some of the mineral interests that Wilson had reserved and to which they had succeeded. Leroy McCall represented M. L. Franzen in that litigation. On January 20, 1939, the parties to that suit entered into an agreement settling it. The general effect of the settlement involved Franzen's surrender of a part of the minerals he had acquired by the 1930 deed so that his mineral interests were reduced from one-half to $\frac{3}{8}$ths. The agreement recites that its subject matter is the property "described in and conveyed" in the 1930 deeds from

Wilson to M. L. Franzen, including that covered by the omnibus clause. Attached to and made part of the agreement are exhibits describing the property involved therein. One of those exhibits relates to "the following Lots and Blocks in the James Hogatt League, Abstract No. 14, Chambers County, Texas * * *." There follows that language a number of lot and block descriptions including "Lots 1, 4 and south one-half of Lot 8 in Block 17." It is to be noted that this agreement was made before the deed from Wilson to Page was recorded. The plaintiffs contend that this agreement was, in effect, a conveyance to M. L. Franzen of at least ⅜ths of the minerals under the subject property for value and without notice of the earlier deed to Page. To submit this claim to the jury the plaintiffs requested three special issues asking (1) if M. L. Franzen paid valuable consideration "as a part of or as a result of the said settlement agreement;" (2) if at the time of such agreement M. L. Franzen had no knowledge of the 1912 deed from Wilson to Page, and (3) if at the time of the agreement M. L. Franzen's attorney, Leroy McCall, had no knowledge of such deed which knowledge was acquired by him in the course and scope of his employment as such attorney. The trial court refused to submit such issues, which rulings are the subject of points of error presented in appellants' brief. Those points of error are overruled.

■ In the first place we do not believe the settlement in question is susceptible of the construction that by its execution Wilson's successors intended to convey to M. L. Franzen any interest in land in which he did not already own an interest. The substance of the agreement considered in the light of the circumstances under which it was executed, was to effect a surrender by M. L. Franzen of a part of the interests he already owned.

■ Furthermore, the relevant description in the agreement was of same Lot 1, Block 17 in the Hogatt League—not Lot 1, Block 17 of Winnie Suburbs. While there was evidence from which it could have been found as a fact that the parties to the agreement intended to describe the property here involved by such language, such intention is not established as a matter of law. The plaintiffs did not request any special issue inquiring as to such intention. The trial court is, therefore, deemed to have found that the parties did not intend by the questioned description to describe the property involved in this case. Rule 279, Texas Rules of Civil Procedure.

■ The trial court was also justified in refusing the requested issues in that the uncontroverted evidence conclusively showed that both M. L. Franzen and Leroy McCall knew of Page's ownership of the property. The sale to Page was shown by Wilson's office records. M. L. Franzen had procured an oil and gas lease from Page. M. L. Franzen had showed McCall the notation in Wilson's records showing the sale to Page and had disavowed any ownership in the property. This is true even if McCall be considered an interested witness. His clear, direct and positive testimony as to the contents of Wilson's office records and his and M. L. Franzen's knowledge therefrom was, so far as this record shows, subject to being contradicted by the plaintiffs and they failed to do so. Such uncontradicted testimony can be taken as conclusive evidence. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co. (Tex.Sup.Ct.1965), 391 S.W.2d 41. The trial court, therefore, did not err in refusing plaintiffs' requested issues.

The judgment of the trial court is affirmed.